DILLON SUPPLY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26913. Promulgated July 30, 1930.

*A. L. Cox, Esq.*, and *B. W. Biggs, C. P. A.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

OPINION.

MATTHEWS: The issue raised by this proceeding is whether the amounts claimed by petitioner as deductions for bad debts in 1922 and 1923, and disallowed by the respondent, represent bad debts ascertained to be worthless and actually charged off by the petitioner, or whether the amounts disallowed represent amounts set up as a reserve for bad debts. The petitioner in 1921 had elected to claim as a deduction for bad debts, the bad debts actually charged off. It had no intention of changing the method of reporting as bad debt deductions the debts ascertained to be worthless and charged off. It made no request to change to a reserve method of claiming bad debt deductions, as is required by the regulations of the Treasury Department, and we are satisfied that petitioner, in closing its books for 1922, intended merely to change the method of charging off the debts ascertained to be worthless.

The Board has had occasion to consider what the ascertainment of worthlessness means. In *John E. Saddler*, 2 B. T. A. 1305, we

said: "The ascertainment of worthlessness is the exercise of sound business judgment, based upon as complete information as is practicably obtainable." In *Howard McCutcheon*, 18 B. T. A. 834, we further said: "Such an ascertainment must be viewed in the light of surrounding facts and circumstances, which must be such as to cause a reasonably prudent business man to conclude that the debt is worthless to the extent so ascertained. A remote hope of ultimate salvage is not sufficient to deny a deduction." See also *American Warehouse Co.*, 19 B. T. A. 8.

In *Pacific Pipe & Supply Co.*, 2 B. T. A. 870, we said:

* * * The words "debts ascertained to be worthless," used in the statute, must be given a reasonable interpretation. The possibility that a small part of the debt may ultimately be recovered will not prohibit the writing off of the debt as worthless for income-tax purposes when every consideration of good business directs that it be charged off. As we have said in the *Appeal of Egan & Hausman Co., Inc.*, 1 B. T. A. 556:

"In adjusting their accounts and debts business men are called upon to use sound business judgment and prudence and are justified in eliminating from their assets such accounts and debts as are past due and which they are satisfied that they can not realize upon within some reasonably determinable period. They do not have to await uncertain and future events, nor are they called upon to wait until some turn of the wheel of fortune may bring their debtors into affluence, to enable the receivers of a bankrupt institution to eke out a liquidating dividend."

  *         \*         \*         \*         \*         \*         \*

The Courts have also had occasion to consider the meaning of the words "debts ascertained to be worthless." In *United States* v. *Frost*, 25 Fed. Cas. 1221, the defendant was indicted for false return of income. The Act involved in that case permitted a deduction of "debts ascertained to be worthless" and the court said on this point: "The language is, 'ascertained to be worthless.' By whom or how? The law is silent on this important point, and, therefore, there must be a discretion given to the person making his returns and, if that discretion is used fairly and honestly, there would seem to be no just ground of complaint."

This case was cited with approval in *Selden* v. *Heiner*, 12 Fed. (2d) 474, in which the meaning of the words "debts ascertained to be worthless and charged off within the taxable year," as used in the Revenue Act of 1918 was considered. The court said on this point:

* * * The statute prescribes no method by which such fact shall be ascertained, and we must not become wiser than the statute, and attempt to substitute some method of ascertainment not prescribed, and therefore presumably not contemplated by Congress. The statute contemplates a situation with

which the taxpayer is confronted, and certainly he is made, in the first instance, judge of the worthless character of the debt. When he, in good faith, believes that the legal situation of the debt is such, considering all the surrounding and attendant circumstances, that the debt is not in fact recoverable, and that legal action to enforce payment would in all probability not result in obtaining any substantial part of the debt, although there might be a remote possibility that a small part thereof might ultimately be recovered, in this situation, he is justified in treating the debt as worthless and charging the same off on his books. He is certainly not required to do a vain thing, to institute some expensive proceeding to legally ascertain what he already knows. * * *

C. A. Dillon was the one in authority authorized to determine what accounts of petitioner were worthless. His action in determining that certain specific accounts receivable were worthless was the exercise of sound business judgment and prudence. An analysis of the accounts receivable which were submitted in evidence, and the reasons for charging off each account, together with testimony of Dillon, convince us that at the time he examined the accounts receivable ledger at the close of each year he was justified in considering the accounts in question worthless.

We conclude that the debts had been ascertained to be worthless within the degree of certainty required by the statute.

The statute does not prescribe any particular method of charging off bad debts. The method followed by petitioner in handling the accounts determined to be worthless as of December 31, 1922, and December 31, 1923, is substantially the same as that which was before this Board in *O. S. Stapley Co.*, 13 B. T. A. 557, and in *McMinnville Manufacturing Co.*, 19 B. T. A 486. In both cases we held that there was a substantial compliance with the statute with respect to charging off the accounts in question. See also *Zebulon Vance Pate*, 13 B. T. A. 1236, *Ewald & Co.*, 18 B. T. A 1130, and *Poel & Kelly, Inc.*, 19 B. T. A. 1317.

In view of the facts in this case, and on the authority of the above decisions, we hold that the method followed by the petitioner constitutes a substantial compliance with the requirements of the statute respecting the charge-off of debts ascertained to be worthless, and that it is entitled to a deduction for bad debts for 1922 in the amount of $15,250.50 in addition to what the respondent has allowed, and for 1923 in the amount of $21,685.63.

The amount collected in 1923 on the accounts charged off in 1922, and deducted by the respondent, will be restored to income for 1923.

*Judgment will be entered under Rule 50.*