HENRY R. HUNTTING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75304. Promulgated April 25, 1935.

*William W. Johnston, C. P. A.,* and *Andrew T. Smith, Esq.,* for the petitioner.

*G. W. Brooks, Esq.,* for the respondent.

OPINION.

SEAWELL: Upon the issue presented the applicable statute is section 23 (j) of the Revenue Act of 1928, which is as follows:

In computing net income there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Petitioner, upon whom the burden rests, says and contends that he has successfully carried the burden of the issue and shown himself entitled, under the statute quoted, to the deduction claimed.

Respondent, on the other hand, says and contends that petitioner has failed in three different ways to carry the burden of the issue, viz: (1) Petitioner exchanged his 5½ bonds for 27½ shares of stock of the Punta Alegre Sugar Corporation in pursuance of a plan of reorganization; (2) petitioner never charged off the alleged bad debt within the taxable year 1931; (3) petitioner failed to prove that the debts were worthless. We will consider these questions in their order.

1. *Exchange of bonds for stock pursuant to a plan of reorganization.*—Under section 112 (b) (3) of the Revenue Act of 1928 it is provided that no gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation. Petitioner says, however, that he makes no claim in this proceeding for any deductible loss because of the exchange of the 5½ bonds for 27½ shares of stock in the new corporation; that the exchange referred to took place in a year subsequent to the taxable year here being considered. Respondent replies that receivers

were appointed in June 1930, and a committee submitted a plan of reorganization for approval; that the plan was later carried out, and the exchange of bonds for stock was made under the plan. Respondent cites two Board cases in support of his position, *First National Bank of Champlain, N. Y.*, 21 B. T. A. 415, and *Rockford Dairy, Inc.*, 26 B. T. A. 501. In these cases it appears that reorganization occurred in the same year in which the loss was claimed and that the claimed loss grew out of the reorganization. We find nothing in section 23 (j), quoted above, or in section 112 (b)(3), *supra*, which requires a holder of a bond to anticipate a reorganization of the issuing corporation, even in a case as here, where a plan has been formulated and abandoned, and a new committee named to prepare another plan, and another plan has been prepared and carried out in a subsequent year. If by reason of the crippled condition of a corporation a bond has become recoverable only in part, the Commissioner may allow the bond to be charged off in part by the owner; and there is no prohibition in such case against the owner using the bond in exchange for other securities in a reorganization in a subsequent year, gain or loss on the latter transaction to be recognized only when the new security is disposed of. In the instant case, no plan of reorganization had been adopted before the end of 1931, and the reorganization finally accomplished was in 1932, after the corporate assets had been sold on April 18, 1932. We hold the exchange of the bonds for stock in the subsequent year did not affect the charge-off of partial worthlessness in 1931.

2. *Petitioner never charged off the alleged bad debt in 1931.*— Petitioner testified, and there was evidence of corroboration, that he ascertained in December 1931 that his bonds were " worthless, or nearly so ", and that he resolved to charge them off. His record of investments was kept by his bookkeeper in a small memorandum book used for the purpose, showing the stocks in which he dealt. In it was shown the following entry in reference to his Punta Alegre Sugar Co. bonds: " December 31, 1931, Profit and Loss $5,458.75." This entry was not made on the purported date, but on February 3, 1932, just before his income tax return was made out and filed. On the return he deducted as a loss the full amount paid for the bonds, $5,458.75. In his petition in this proceeding his claim for deductible loss in said bonds for 1931 is alleged to be " not less than $4,908.75."

Construing section 23 (j) the Commissioner has published G. C. M. 13114, Cumulative Bulletin XIII-1, p. 116, which is summarized as follows:

In order for a taxpayer to have the benefit of a deduction for debts ascertained to be *partially* worthless there must have been an ascertainment by the taxpayer of partial worthlessness *within the taxable year*. The charge-off in

such a case being a technical requirement may be made after the taxable year. The allowability of the deduction is, of course, subject to the discretion of the Commissioner.

The discretion of the Commissioner, here referred to, is a legal discretion which may be reviewed by the Board and the courts. *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320.

In a recent case before the Board, in which the taxpayer kept a memorandum cash journal but made no charge-off in the book, or elsewhere, in reference to a partial loss claimed on a bank deposit for the year, and made no claim for deduction in her income tax return for the year, she was held, nevertheless, entitled to the deduction claimed. *Allie M. Turbeville*, 31 B. T. A. 283.

In the 1932 Revenue Act there is a change in the wording of section 23 (j) which may indicate a change of policy in reference to the charge-off of partially worthless debts, but as to that we are not here concerned and intimate no opinion.

We hold the charge-off, so far as required by the statute, was timely made in this case.

3. *Failure of proof that the debts were worthless.*—The ascertainment, under the statute, of partial (or total) worthlessness of a debt is obviously for the petitioner, in the exercise of his best judgment, first to make. *Dillon Supply Co.*, 20 B. T. A. 404. The facts and circumstances surrounding the petitioner's decision should establish it as that of a prudent person of sound judgment. *Anna Bissell*, 23 B. T. A. 572.

Evidence of the absence of assets at the time of liquidation years after the notes of the taxpayer were charged off is held admissible in confirming the taxpayer's previous decision of worthlessness at the time of the charge-off. *Peyton Du-Pont Securities Co.* v. *Commissioner*, 66 Fed. (2d) 718.

In the year when the partial worthlessness of the Punta Alegre Sugar Co. bonds was claimed by petitioner interest on the bonds was in arrears for more than two years; receivers had been appointed for the company and all its subsidiaries; a plan of reorganization had been formulated and abandoned because impossible to accomplish; the receivers under the order of the court had been permitted to make temporary loans to meet current expenses and to pledge the corpus of the assets; foreclosure to meet maturing gold bonds and bank debts was imminent; loans were secured only upon hard terms; the price of sugar, the only commodity it had for sale, continued to decline, and it was published in the trade journals that unless the price of sugar improved the money borrowed to harvest and manufacture the crop of cane could not be repaid out of the proceeds of the crop; bonds of the company could be sold only at

nominal sums, and apparently they were taken off the market soon after November 1, 1931, when the last sale was made at the price of $35 for a $1,000 bond. In the succeeding year after petitioner's income tax return for the taxable year was filed, the property of the Punta Alegre Sugar Co. was sold under order of the court; the pro rata share of the proceeds of sale to pay the unsecured debts amounted to less than one third of 1 percent; a reorganization of doubtful value was effected in 1932; petitioner's unsecured bonds of $5,500 par value were exchanged for common stock of the new corporation of one half the par value of the bonds; and this stock was sold by petitioner in 1934 for $188.79. We hold proof of partial worthlessness of the bonds in 1931 was sufficiently made.

In our opinion, and we so hold, the indebtedness to petitioner on account of the bonds for which he paid $5,458.75 was not recoverable on December 31, 1931, in an amount greater than $550, and petitioner is entitled to a deduction from gross income in computing his income tax for 1931 in the sum of $4,908.75.

*Judgment will be entered under Rule 50.*