Houston Chronicle Publishing Company v. Commissioner.
Houston Chronicle Publ. Co. v. Commissioner
Docket No. 838.
United States Tax Court
1944 Tax Ct. Memo LEXIS 82; 3 T.C.M. (CCH) 1071; T.C.M. (RIA) 44327; October 12, 1944
*82 BLACK Order In accordance with the memorandum to accompany this order, it is ORDERED, that the petitioner's motion filed herein on September 29, 1944, for reconsideration, revision of findings of fact, and modification of opinion promulgated by this Court on August 21, 1944, be and the same is hereby denied. Memorandum to Accompany Order BLACK, Judge: On August 21, 1944, we promulgated a report in this proceeding. On September 29, 1944, petitioner was granted leave to file "Motion For Reconsideration, Revision of Findings of Fact, and Modification of Opinion." Issue No. 1. Petitioner seeks a credit under section 26 (b) of the Revenue Act of 1938 and of the Code. This credit is allowable only if the amounts in question of $1,128.31 and $335.43 were "received as dividends from a domestic corporation which is subject to taxation under this chapter" as provided in section 26 (b). The only facts we have are those that were stipulated and they are very meager. These stipulated facts are set out in our findings of fact. Petitioner has not shown that the Texas Employers' Insurance Association is a domestic corporation "subject to taxation" under the Internal Revenue laws. Petitioner *83 did ask us to take judicial notice that the Association is taxable under section 207 of the Revenue Act of 1938 and of the Code. In our report we found it unnecessary to pass upon that question and stated that "Even if it is so taxable the result would be the same." We adhere to that conclusion and for the purposes of this discussion will assume that Texas Employers' Insurance Association is a mutual insurance association other than life and is taxable as provided by section 207 I.R.C.
The material provisions of section 207 of the Revenue Act of 1938 and of the Code are identical and are stated below. [1] If it be assumed, as we do, that the Association is subject to taxation under this section, as petitioner contends, then these refunds of "premiums" (so stipulated) are either deductible by the Association from its gross income under section 207 (c) (3), or if "dividends" are not deductible under section 207 (c) (1) (B). If the refunds are deductible under section 207 (c) (3), we think it necessarily follows as a conclusion requiring no citation of authority that such refunds would not be "dividends" as that term is defined by Congress in section 115 (a) of the Revenue *84 Act of 1938 and of the Code [2] for in no revenue act has Congress ever allowed dividends paid as a deduction from gross income. In other words if dividends are not deductible, then it would seem to follow that items which are deductible would not be dividends. On the other hand if the refunds are not deductible under section 207 (c) (1) (B) because they are insurance dividends, then the refunds in question are specifically excluded from the definition of dividends under section 115 (a) which provides that "The term 'dividend' when used in this chapter (except in * * * section 207 (c) (1), relating to insurance companies) means" etc. So as we stated in our promulgated report "Even if it is so taxable the result would be the same." *85 Petitioner's motion on this issue is, therefore, denied. Issue No. 2. Petitioner seeks a deduction of $49,579.26 as an addition to its bad debt reserve either in 1938 or 1939. The respondent determined this was not a debt in the first place but represented a gift or contribution by petitioner to its insolvent subsidiary. We sustained this determination upon the authority of W. f. y/oung, Inc. v. Commissioner, 120 Fed. (2d) 159, and Reading Co. v. Commissioner, 132 Fed. (2d) 306. In its motion petitioner contends we did not give effect to our decision in E. P. Adler, 44 B.T.A. 112. We think the situation in that case was quite different from the situation in the instant proceeding. In the Adler case, Adler was a stockholder and president of Davenport Airways, Inc. At the close of 1932 the corporation was insolvent and owed a bank $26,278.51 represented by 11 promissory notes which had been endorsed by Adler personally. The bank closed its doors on December 24, 1932 and in 1933 the receiver of the bank called on Adler for payment of the notes. Adler persuaded the receiver to *86 extend payment on the notes on condition that the corporation would lease its property to the City of Davenport for four years at an annual rental sufficient to retire the notes; that the lease would be assigned to the bank; and that Adler would personally guarantee that the lease would be kept in full force and effect desipite any default by the corporation. Adler agreed to give such a guarantee, and did give it. In carrying out that guarantee it became necessary for Adler to advance on behalf of the insolvent corporation certain amounts in 1935, 1936 and 1937 to keep the lease in full force and effect. The rental from the property paid by the City to the bank was only sufficient to pay the notes and interest thereon. We held that the amounts advanced by Adler in 1935, 1936 and 1937 were deductible as losses in those years, respectively, because he had to make such advances in fulfillment of his guaranty to the bank receiver to keep the airport in operation. We do not have that situation in the instant proceeding. In the first place petitioner here is claiming a deduction for bad debts and not a deduction for losses. The statutory provisions for bad debts and for losses are mutually *87 exclusive. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 13 AFTR 1164. In the second place we took pains in our opinion to point out that the amounts advanced by petitioner in 1938 were not advanced or used to make good the 1927 and 1932 guaranty agreements or any other guaranty agreements into which petitioner had entered. These advancements under the facts which we have in the instant case, come under the classification of voluntary payments or advancements to a debtor who is already wholly insolvent, as those terms are used in such cases as: American Cigar Co. v. Commissioner, 66 Fed. (2d) 425; W. F. Young, Inc. v. Commissioner, supra; Reading Co. v. Commissioner, supra. The stipulated facts show that petitioner in 1938 had advanced to its wholly owned subsidiary, the Building Company, certain sums of money of which $64,942.44 remained owing to petitioner December 31, 1938. Of this sum it has been stipulated "$54,000 was used by the Building Company to pay its obligation which had arisen out of a lease between the Building Company and the Houston Chronicle Realty *88 Company". Our opinion heretofore promulgated calls attention to this state of facts, and that the $54,000 in question was not advanced to make good any guaranty which petitioner had made. It was outside and beyond petitioner's guaranty contract which was fully described in our findings of fact. The $54,000 was a part of the $64,942.44 which stood on petitioner's books as an account payable against Building Company at the end of 1938. Of this $64,942.44, $49,579.26 still remained unpaid in 1939 and petitioner canceled and forgave the debt to Building Company at the same time it forgave and canceled other large indebtedness against Building Company, most of which had been charged off in prior years as bad debts, and seeks to deduct the $49,579.26 in question, which had not been previously charged off as an addition to its bad debt reserve for the year 1939. For reasons stated in our report heretofore promulgated, we denied this deduction. For reasons already stated herein, we think that the rule of the Adler case which the petitioner stressed in its brief and which it again urges in its motion for reconsideration does not apply. We feel we must adhere to the views which we expressed *89 in our promulgated opinion. We therefore deny petitioner's motion on this issue. An order denying petitioner's motion on both grounds will be entered in accordance with this memorandum. Footnotes
1. SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE. * * * * *
(c) Deductions. - In addition to the deductions allowed to corporations by section 23 the following deductions to insurance companies shall also be allowed, unless otherwise allowed - (1) Mutual Insurance Companies Other Than Life Insurance. - In the case of mutual insurance companies other than life insurance companies - * * * * *
(B) the sums other than dividends paid within the taxable year on policy and annuity contracts. * * * * *
(3) Mutual Insurance Companies Other Than Life and Marine. - In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policyholders and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves. ↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this chapter (except in section 203 (a)(3) and section 207 (c)(1)↩, relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.